of this panel sitting for the week. We have two cases to hear this morning. You may all be well-experienced advocates in front of this court. Do be respectful of the time with the plight that is on the podium there in front of you. Certainly if you're answering a question from the court when the bell rings, except it doesn't ring, when the light turns red, finish your answer, but otherwise stop when the light turns red. First argument of the day is Guillermo Gray v. Killick Group. We'll hear from the appellate. May it please the Court. This case involves a single issue. Should a plaintiff who brings a Fair Labor Standards Act claim asserting he was misclassified as an independent contractor and therefore denied overtime pay be barred by the doctrine of judicial estoppel because he previously stated in an essential needs driver's license case that he was self-employed? To give this Court some background, from 2013 to 2020, appellant Guillermo Gray worked as a pipeline welding inspector for appellee Killick Group LLC. Killick is an independent third-party pipeline inspection company. Also, you are getting into the merits. I'm not trying to stop you. Whether we will or not, it remains to be seen. It is mentioned in your friend's briefing on the other side that he acknowledged working for other companies or other companies as well. Something called Ace, I think, was mentioned. What's your response to that? What evidence is there that when he was working, you say, for Killick, he also may have been working for others? Well, the answer to that is simply that it is not inconsistent with an employee to have a second job. It's not inconsistent for an independent contractor, if that is the case, what he was, to have a second job. So are you saying there is evidence that at that time he was working for others in the same inspection business? Not throughout the entire tenure of his time with Killick, but for a few years therein, yes. All right, counsel. Thank you. As such, Mr. Gray's words— I mean, he would take jobs as they came to do what he wanted to do, and it was sort of event by event, rather than, okay, every day you've got to come in from 8 to 8. It was event by event, and he did events for others who were competitors of Killick. How is that an employee of Killick? Well, because quite simply, you can't have two jobs, just as I mentioned previously. In the United States, people work multiple jobs all the time. But not the same entity like that. I mean, so maybe somebody works for real estate, but then they also work at McDonald's. That is not the same thing as what was going on here, and he was swirling around and doing event by event. Why isn't that self-employed? Certainly. Well, because the primary bulk of his work and the primary time that he—and this is in the record as well—the primary use of his time between 2013 and 2020 was working for Killick. It was the primary source of his income. It was his main priority. Now, on the side, did he take a few jobs here and there? Of course he did. He did supplement his income with those other jobs, but again, that's not inconsistent with him being an employee of Killick. Okay, but he also had a company, Veritas, and the Veritas is turning in taxes and things like that and deducting things. And so again, it's not like the person working for real estate at McDonald's, but an employee of both and acting like an employee of both. Most people don't form their own company and yet claim, oh, but I'm not self-employed. This is just my company. How does that fit in? Certainly. Veritas Inspectors, the company that was formed by Mr. Gray, was formed at the urging of Jack Lawler, who was the owner of the company, Killick, and it was precisely to facilitate this fraud that he was, in fact, a self-employed individual. It was not something that Mr. Gray took on his own initiative to do, and the record also supports that. Can you point me to a good place to look at that? Certainly. It's in Mr. Gray's deposition, and I would need to look at it. You're talking about that he formed Veritas at the urging of Killick Management? That's what you're saying is in the deposition? That is what is stated in Mr. Gray's deposition, which is also in the record. I don't have the exact site to it, but that's what he testified to in his deposition. Although Mr. Gray was paid as an independent contractor by Killick, for all intents and purposes, he was treated as an employee, and this includes Killick requiring inspectors like Mr. Gray to create resumes which contained Killick Group's letterhead on the top and represented Mr. Gray as a representative of Killick Group. Killick would then use these resumes to obtain work, representing that the inspector that they were offering was a representative of Killick. At all times pertinent to this case, Killick exercised control over Mr. Gray's work as if he was an employee, and this includes . . . Let me ask, did the district court actually get to making a determination about whether or not he was an employee or an independent contractor or self-employed? Did the district court get to making any determination about that? That is a good question. The district court did not reach that issue at all. Because the district court decided that based on judicial estoppel, he couldn't go forward on a FLISA claim. That is correct. All right. But are you saying summary judgment . . . you're going through the evidence, and I was alluding to that earlier, whether we would get to the merits or not. How could we get to the merits of this? Was it presented as something . . . are you seeking to have us declare your client an employee at this stage, or just remand if we disagree with judicial estoppel? Yes. We are simply asking that the Court review the lower court's granting of summary judgment on the basis of judicial estoppel and finding that it was erroneous. Yes, but the law is very clear in our court that we can affirm based on anything raised in the district court. And this issue of other indication, not just the judicial estoppel, but the fact that your client was self-employed, was raised in the district court and was raised in the appellee brief, and you all determined not to respond to that. You said, oh, you can't consider that. But the law is really clear in our court that we can affirm on any grounds raised in the district court, whether the district court ruled on it or not. Now, sometimes we send it back as we say, well, we need to have them . . . but this is a summary judgment. It's not a factual evaluation. Why wouldn't we? If we thought the judicial estoppel, that you're right on that, but we thought that your opponent was right . . . I'm just using this as a hypo . . . thought your opponent was right on the other point, why wouldn't we rule on that? Because even in the case law cited in the appellee's brief, which is this Donahoe decision, the court, the Fifth Circuit in that case, only reviewed issues regarding jurisdiction and purely legal issues. The court in that case, when it was presented with, the Fifth Circuit in that case, when it was presented with the opportunity to review a factual matter, declined to do so. Well, Counsel, I'm not . . . I don't know if you're disputing this. I don't know if the best case was cited. I wouldn't pursue that. But I do think the law is settled that if in fact there are no genuine disputes of material fact, if the issue was squarely raised with the district court and the court never reached it, it's available for us. So it does seem to me it would be helpful to you if you could distinguish or discuss what genuine disputes of material fact there may be that would not allow us to reach that issue. You do need to get to judicial estoppel at some stage, but nonetheless . . . Certainly. I certainly understand. Well, if the Court is asking whether there are disputes as to material facts regarding the economic reality of Mr. Gray's employment with Killick, there are nearly every single element under the economic realities test is disputed in this case. And if the Court would like me to run through it, I can. Essentially there are five elements and now there's a sixth element that has recently been adopted by the courts into determining what the . . . under the economic realities test of whether an individual is an employee or whether they're an independent contractor. And that is the degree of control exercised by the alleged employer, the extent of the relative investments of the deputative employee and employer, the degree to which the employee's opportunity for profit and loss is determined by the employer, the skill and initiative required in performing the job, and the permanency of the relationship. The sixth factor is whether the worker's role in the company was something central to what that company actually did. And that's been adopted by a lot of circuits and I think it was also adopted here in the Fifth Circuit as well, that factor. So in just quickly running through these, the degree of control exercised by the alleged employer. From 2013 to 2020, Mr. Gray worked for Killick and during that time, Killick would employ what's called SQS coordinators or managers to basically manage the work of their inspectors. And this includes everything from the way the reports are written, where the inspectors go for their inspections, the assignments that the inspectors are given. The reports would be submitted first to the SQS coordinator who would then edit the report and then send it back. The SQS coordinators would give them what's called a scope of work, that is the inspectors. The scope of work would list out the requirements for that particular job that Killick expected of its inspectors to fulfill. Furthermore, Killick would give Mr. Gray assignments routinely. And Mr. Gray testified in his deposition that he did not believe that he was allowed to turn down those assignments lest he be not allowed to work for Killick in the future. The only time that Mr. Gray... He did turn down some, but that was only when he was already working for Killick on another assignment. So the SQS coordinators, there are many of them. And they didn't always know, the left hand didn't always know what the right hand was doing at Killick. It had multiple SQS coordinators. But what did he do when he was working for other companies and they asked him to work for something? Did he not turn that down? As far as I'm concerned, that didn't occur. So I can't really speak to that. But going to the second factor, the extent of the relative investments of the putative employee and employer. Killick is an international company. It has offices in many places. It employs several, several employees. It has SQS coordinators. It has a management hierarchy. It has offices in Canada, the United States, and other countries. And Mr. Gray, all he did was create Veritas employees. He made a DBA and filed it with the Secretary of State of Texas. Doesn't have an office, doesn't have any secretaries or any employees or anything like that. Counsel, let me suggest that you move on to judicial estoppel. You don't have much time left. It seems to me what you're doing with the factors is just trying to tell us what the evidence is on each of the factors. Can you identify before you turn to judicial estoppel, what would you say is the salient, the most significant fact dispute you would point us to? So the most salient fact dispute here is that when Mr. Gray represented in his application for the essential needs license Okay, I'm not talking about judicial estoppel. I can understand why you moved that way, because it seemed to be put together. I wasn't trying to put the two together. Before you moved to judicial estoppel, what would you say the most significant fact question is that would suggest we can't decide the undecided issue of whether on the merits he was an employee? Because it is a purely factual issue that is something that the lower court should be required to take up first. And I would again point the court to its decision in Donahoe, which you've already mentioned. Okay, I'm just looking for the facts. Why don't you tell us about judicial estoppel? Certainly. And judicial estoppel here should not be applied, was misapplied by the lower court, precisely because the essential needs application that Mr. Gray submitted did not rely upon his status as an independent contractor or employee. It simply relied and he was Yeah, but if you worked for a big company and you had issues, the big company could help you. Whereas if you're self-employed, you need to be able to drive. I mean, everybody, almost everybody needs to be able to drive. So the notion that you say, oh, I need to Anything you do in life is enough. So working at a big company would seem to be enough and not require your car the way being self-employed and having to drive around as a self-employed person is. So even if the court didn't mention it, it was part of what was said to the court that they looked at to make the decision. I don't know that big companies provide that type of support to employees. I have never heard that personally. I don't think it's within the facts here in this case, but certainly Mr. Gray, even if you Do you know, do you know why he even put in that petition or request to have his license reinstated? Do you know why he even put that phrase in there that he was self-employed? I think because again, he was led to believe that he was. I mean, the purpose of the FLSA I guess what I'm asking is, do you think he thought that relevant to the determination about whether or not his license would be reinstated? I think it was just a collateral, irrelevant fact that just sort of gave context to that he had this job. I don't think it was designed to persuade the court. If he could have said he was an employee, the court would have reached the same decision. What evidence do you have on that or cases do you have that working for a big company you still get your license back? I would simply point the court to the Texas Transportation Code, which is cited in our code, states the factors that are required to obtain an essential need license. And those factors are that he had an essential need for a license, the hours and location of essential travel, the reason for the petitioner's license suspension, evidence of financial responsibility. I'm familiar with the statute. I'm asking for a case. I don't have a case. Texas is kind of a big state, so they have a lot of cases. So is there a case where it seems like what the heck is this DWI if you're just going to get your license back because you need it? I don't have a case on point that says that. I don't know if it was ever made an issue of litigation in Texas. But again, he only had to demonstrate an essential need, which was that he was only required to show that his need to operate a motor vehicle and the performance of an occupation or trade or for transportation to and from the place at which the person practices the person's occupation or trade. It has nothing to do with his status as an employee or independent contractor under the FLSA. Are you aware of any case law under that statute? I am not aware of any case law that . . . I think if somebody had it denied, it might appeal. I don't know what the appeal rights are under the statute. But anyway, maybe the other side is familiar with some case law. Thank you. We'll hear from you in rebuttal. May it please the Court. Steve Knight on behalf of the Appellee Acrylic Group, LLC. I want to start with the judicial estoppel argument. As the United States Supreme Court instructs, the equitable judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. The equitable doctrine invoked by the district court in its discretion to protect the integrity of the judiciary applies when a party's current position is inconsistent with a previous one, the court accepts it, and the nondisclosure was not inadvertent. I submit that all of these elements of judicial estoppel apply here. First . . . Well, they kind of claim inadvertent because they're claiming that . . . he's claiming that he thought, that Gray thought he was a self-employed person. Except the statement that he gave to the criminal court was not that I'm self-employed. The statement that he gave to the criminal court was that I'm self-employed and I have nobody to depend on but myself in connection with work-related needs, which would include transportation here. That's the most important part of his statement. I've got nobody else that I can depend on. Well, counsel, you've certainly heard the questions here already that somehow a big company might suggest there would be other ways. Is there any suggestion in this record that that is a legitimate consideration as to this company? That what is a judicial . . . That Killick might have provided transportation or Killick's big enough to be providing transportation? I must say, it strikes me that some evidence along those lines would be helpful as opposed to just speculating. If you're big enough, you may go pick up your employees. Well, I think that where the evidence could have been developed perhaps is in the criminal court because what we know is who presided over that proceeding was Judge Bill Harmon of the Harris County Criminal Court No. 2. Now, skirting a little bit outside the record here, I did a little bit more background in looking at him. He was a very well-known proponent of mothers against drunk drivers. He also has YouTube videos out there about the dangers of drunk driving. Why is that important is attorneys that defend DWI cases in his court, they regularly move to recuse him. One is Simpson v. State, 2014 Westlaw 2767126. So Judge Bill Harmon in the criminal court, if he is hearing somebody say, look, I work for a global company and they employ people across the United States and I am supervised in my every move by this global company, which means the essence of his job is to travel to companies to do inspections. He claims now in Judge Bennett's court that everything he does is supervised. Clearly, Judge Harmon should have been given the opportunity, if what he's telling Judge Bennett is truthful, to say, well, let's investigate this more because drunk driving is a serious thing. I'm not just going to put you back on the road if you have carpool available to you, which it sounds to me like you do. But he didn't have the opportunity to go down that road with Mr. Gray because Mr. Gray had a purpose. He told the truth. He said, I am self-employed. I have my own business. He identified the business to Judge Harmon. He identified the name of it, Veritas Inspections. I work, I am self-employed. I work, I have nobody that I can depend on. And Judge Bill Harmon accepted that. And that's undisputed here. But under Hopkins v. Cornerstone, couldn't he be self-employed under one statute and an employee under a different statute? So the Hopkins case is the primary case that they rely on. And it is fundamentally distinguishable from the situation here. The reason being is that the FLSA plaintiff in the Hopkins case was involved in prior sexual harassment litigation. And he asserted that he's an independent contractor somehow as a defense. I'm not quite sure how that works. But that's what he sedated. He provided no factual information about the circumstances of his work. All that he said is, I'm an independent contractor. Well, we know that independent contractor, that's kind of legalese. He's a layman. And he's been told by his lawyer, we're asserting independent contractor as a defense. That's as far as it went. Independent contractor, which caused this court to say, look, somebody may not know what that means. Gray didn't use the word independent contractor. He gave factual detail. He identified his own company, a DBA that he filed in Harris County on purpose to set up his company. He told Judge Harmon, I am self-employed. But he went further than that. He said, I have nobody to depend on. Clearly conveying the message to Judge Harmon that, lest you think I work for a global company and have co-workers and supervisors who could transport me or who I could possibly carpool, don't go down that road. He convinced Judge Harmon to not go down that road. He successfully did so. And now that purpose doesn't suit him anymore. So he told Judge Bennett that none of that was true. I am supervised in my every move, traveling from company to company, doing these inspections. They're looking over my shoulder. They're with me. Everything is by them. Had Judge Harmon been told that, probably wouldn't have gotten the needs license. But now he wants to walk that away because he wants more money under the FLSA. Are you saying he lied when he said he was self-employed? No, I'm saying he told the truth when he said he was self-employed. And that's what caused him to lie to Bennett. I don't want to use the word lying. I'm saying that he is doing what judicial changing, which is what judicial estoppel precludes, because we have an obligation here to protect the integrity of the judicial process. That's what the Supreme Court instructs. And that's precisely what Judge Bennett did. Judge Bennett didn't like the fact that he told a neighboring judge down the street, Bill Harmon, well-known criminal judge, something to get a desired end. He was successful. And now he's coming to Judge Bennett, and Judge Bennett is looking at this and saying, wait a minute. But you're not saying you told him something. So you are saying you told him the truth when he said he was self-employed. I am saying that Gray— You sound like you're saying he made up something to get the license, but you're also saying he was telling the truth. I'm sorry. I don't want to convey that at all. I'm saying that what he told Judge Harmon under oath was true. He is an independent contractor. He is self-employed, and he is self-dependent. This man, he goes from job to job. He's by himself. He's not supervised. He admitted that in his deposition testimony. When Killick contacts him and says, look, I have a job. Are you interested in doing it? He says, if he's available, I'm interested in doing it. And then Killick says, good. Here's the contact information of the customer. Go make arrangements. Keep me informed. Go do the inspection. Gray then travels out to the fabricator's site after getting the specifications for the equipment, and he performs the test. And it's a very interesting test. When Gray was posed, he describes his methodology in detail in his deposition, and he's very thorough, and he's very proud of his work. You can see it in his deposition testimony. He goes through and he inspects every weld, and then he writes a detail report. But your point on the judicial estoppel is they're not consistent with each other. In other words, what he told the criminal court very well may be true, but then what he told Bennett is not consistent with that, or vice versa, whichever one. But the point is the court is not self-employed, so you think what he told the criminal court was correct. But the point being that you think that's the reason for judicial estoppel is one court's being told one thing and other court's being told something different. That's element number one of judicial estoppel, inconsistent statements. Element number two is that the criminal court accepted it. There's no doubt Judge Harmon accepted it. Okay. Let me ask you this. Let's just assume, arguendo, and this is just a hypo, that we return to the, quote, merits. Why shouldn't we send it back? Why should we decide it? I know we have the right to, but why should we go ahead and decide it? You should decide it for several reasons. Obviously, as you pointed out, you have the right to. They pointed out the Donahoe case. What actually happened in that case is the motion to dismiss that raised jurisdictional arguments, multiple arguments, some of which the district court didn't get to. Citing this proposition that I cited in my brief, the court did reach the jurisdictional arguments that were unaddressed. That's one point. Judge Southwick, you recently explained the reason why in the summary judgment context it's important to reach the merits, and that is, as you pointed out in the Taxotere case 2021, because of de novo review, we go forward and look at matters that were not addressed. Now, why should you in this case? Look at this summary judgment record. These summary judgment briefs, briefs were filed, our summary judgment brief and their response was filed after they wanted additional discovery and got it. This is a well-developed record. And notably, when he's asking you to remand it, he's not saying that there's more information, there's more rocks that we have to look under, there's more information to go gather. There's not. It's a complete summary judgment record. It's de novo review, which means we're not in a situation where we need to know Judge Bennett's, with all due respect to him, that we need to know his views on it because it's not a discretionary review. This court is going to conduct a de novo review. Why not do it now? Why cause my client, Killick, more time and energy, and Mr. Gray, respectfully for him, more time and energy and money to go back and re-urge things that are already briefed. Okay, well he claims that it's just a bunch of fact issues. You heard what he said. What's your response to that? My response is in the Parrish case, says that it's not purely a fact issue. You've got facts and circumstances and people may disagree on certain things, but it has to be material facts. The material facts and the ultimate classification issue is a legal question for the court. There are no disputed material facts in relation to the fundamental economic realities test factors, which I'd like to go through now. The first factor, as this court well knows, is the degree of control factor. And this court, and through its many, many FLSA opinions, have commented on, you know, how we view that factor in different contexts. But one critical thing that it does is it looks at who controls the methods or the details of the work. Unquestionably, here, that is Gray. Killick would reach out to Gray for a project after being contacted by a customer. They reach out to Gray because he is very specialized. He has very impressive 20 years in the oil and gas industry and many certifications that make him a good candidate for different types of inspections. If Gray accepts, he's not required to. If he accepts the project, he makes arrangements to go to the site. He inspects this, and we're talking about substantial oil and gas equipment. He's looking at every weld. He's looking at every detail to make sure that it's compliant with the specifications that the customer needs. He then writes his report, and it's a very detailed report, and his work is impressive, and we've got details of it in the record. He sends it to the customer, and the customer then decides, are there issues with this piece of equipment? Because if something goes wrong, I mean, this could be a catastrophe, and the customer has to decide, do I want to contact the fabricator about an issue, or this looks like it's on track. So Gray doesn't- He claimed to have a supervisor and all that. What's your response to that? He claims that he has a... He's not supervised. That's the response to it. I mean, he's pointing to the owner of the company, claiming that he's controlled in every move he makes, which would include traveling to the fabrication sites, contrary to what he told Judge Harmon, but he's not. There's no evidence that anybody from Killick travels with him, tells him what to say. One thing counsel said is that Killick exercises control because... And remember, he cited this too in his brief, too. And I think this might have been the answer to your question, Judge Southwick, but I don't think you ever really got an answer. What's a potential fact issue? One thing that he could have said is, and he did say earlier, but not in response to that direct question, is that Killick somehow edits, or has a say-so in these reports. And I was like, no, they don't, because Gray is the specialist. And the part of the record that he cited, too, I looked at it for that proposition, and I wrote in my brief to address that. However, the email Gray cites says nothing about the manner or method of Gray's work. Killick only asked Gray to, quote, include inspection activities from yesterday and today and send it to me. So, in other words, there were more inspections, more information that your brain absorbed. The report has to reflect it. Please tell me what it is. Killick is not writing those reports. They're not telling Gray how to write the reports. Gray is the specialist. He writes the reports. He's not supervised. He does no work at Killick. He does all work on his own equipment. He's got his car. He's got his cell phone to take pictures. He's got his laptop... Then why do they pay him? Pardon? Why do they pay him? Why does Killick pay them? Killick has relationships with inspectors of all sorts. And Killick promotes itself as the company that will find the best inspector. So, Killick helps them make a match. And once a match is made, and that takes time and energy on Killick's part. You saw parts of the record where Killick will encourage, not require, but encourage the various inspectors they work with to get various certifications. It helps these people in their own business, and it also expands Killick's footprint in terms of the types of business and customers... When you say they don't require it, is there evidence one way or the other of whether Gray would not have gotten certain jobs if he hadn't gotten those certifications? Whether he would have gotten... The way it works is the customer... Well, make sure you're responding to a particular point. You were saying that there's no requirement. We're talking about management and control, and to what extent was Killick requiring certain things. It certainly seems reasonable to me, I'm not going to hire you if you don't have certain certifications. Or you're already my employee, and you have to get these certifications. So I'm trying to figure out what is in the record that would tell us one way or the other if it is just requiring its self-employed people to get them, or is it requiring its employees to get them? How could we tell from the evidence you're talking about which one it is? So this concept of... So let me answer your question directly. It's record on appeal 789. That's the email that they're relying on for the proposition that Killick exercised so much control over these inspectors that they required various certifications. That's simply not the case. The email that's cited and in the record says, we have developed the attached manages for you as a qualified individual to invest in this and hope that you're able to do so. So whenever there's information out there about a potential new certification that might open more doors, not only for the inspector, but for Killick to make business, Killick says, hey, this is out there. We encourage you to do it. Notably, Killick is not saying here's a new certification. You're going to this class to get certified. You take the test. We're paying for it. But if you don't do it, you don't have a job. The email is to go, hey, here's an opportunity. Is it because customers might want that or customers might be persuaded by the fact that the guy that Killick is suggesting has all of these certifications versus somebody at some other company? Yeah. When a customer contacts Killick about a particular type of equipment that needs to be inspected, Killick will go out and say, okay, the best person for this type of job is going to have these types of certifications. So by expanding the number of certifications, if it's a match with what a customer needs, then that would possibly enable Killick to go to Gray and say, hey, you took my advice and got that other certification. Another door just opened for you. Congratulations. Do you want this job? And he can say yes or no. He might say I'm working for another company this week. I can't do it. He has said on several jobs because he's a well-credentialed, well-qualified inspector. What is in the record of what other work Gray did during this time period? The work for other companies that he did. So there's clear evidence that he worked for this ACE, ACE Global Quality Services. Look at the record size on that. Those seem to be from 2020. I know. I don't want to misrepresent. I don't have it in here. I know that there are references to him having made money on his tax returns. And I believe it's for two years. I don't have that in front of me. So I can't say that definitively. Is there some company besides ACE? I'm sorry? Is there some company besides ACE that there's evidence on? I don't recall seeing other companies' names. But what is undisputed in this record is that he has set up his company. He has registered as a DBA. He has advertised on LinkedIn. He has a business card that he... So the point is, even if there's not a definitive other company listed, the evidence is clear that he is not only free to go promote his business, he has promoted his business. Whether he was successful... But he claims that he was forced to open up a company by you all. No. He's not forced. What Kilik explains is we don't have employees. If you want to work for us, here's how we're set up. If you want to set up your company, if you want an opportunity to have work from us, if you don't want to set up your inspection company and have to be solely responsible for going out and getting the leads, we have the leads. We've got the relationships. But here's how we work. He wants to say, forced me? No. All that that is is further indicia of the fact that we don't employ these people. They're not our employees. We don't control them. We don't require them to work. Are his tax... The way he did his taxes inconsistent with being an employee? Totally inconsistent. He's claiming all these deductions, business expense deductions, tens of thousands of dollars of business deductions for travel, for his vehicle, for legal... I don't take business deductions for the United States government. I don't either. But he's, but yeah, he is, he is set up as a company. He files his taxes as a company. He claims, and that's another one of the economic realities test. Does he have the ability to control what he earns? Well, of course he does. He can take on more jobs. He admitted that in his deposition. He can expand his own advertising so that he can work for more than the company that's reflected in the tax return. That and kill it. He has... The opposing counsel said that deposition indicated that he was forced to create this company. What you're telling me in a more benign way that in many respects he was. If you were, if you want to work for Killick, here's how we work. You're not going to be our employee. You need to be self-employed. Maybe you have to create your own company. Maybe you don't. But isn't it, it does seem to me from what you're saying, he needed to declare  He did declare his independence. We don't hire people as our employees. We don't want to control them and we don't control them. So he set up his own business and it's no different than the businesses that were set up in the parish case. The business model is the same in this court held as a matter of law that those people are independent contractors because they are. And this case is very similar to the facts and circumstances of that case. Thank you. Thank you. In rebuttal, your honors, I'd like to address the, uh, issues that were brought up by opposing counsel, namely that, uh, well, namely that Mr. Gray, uh, was his own business or was in business for himself. Essentially in the record will also show this, that, uh, there were numerous instances where Killick referred to Mr. Gray as an employee or in a manner that he was an employee. The first was that I already mentioned that, uh, Killick would send out resumes with their letterhead on it, indicating that Mr. Gray was a representative of Killick. The second is that there is at least one email where Jack Lawler refers to himself. It's not an email. I'm sorry. It's a qualification reference in the record at ROA 177 where Jack Lawler, the owner of the company, refers to himself as Mr. Gray's current supervisor. Um, and states, uh, and then another one where, uh, uh, Killick states that to third parties that Gray has been a senior inspector with Killick, Killick Group covering many disciplines. So again, uh, Killick is, is representing to outside parties that Mr. Gray is actually a, an employee of, of Killick. Uh, as far as these work certifications are concerned, if Mr. Gray, uh, were an employee of Killick, these certifications were likely something that Killick would have had to pay for. So again, we see that Killick is shifting the cost of, of working for Mr. Gray by perpetuating this fraud that he's in fact an independent contractor, uh, to save money. It saves them money on overtime, which is what we're alleging here in the Flissett case, and it saves them money on having to pay for these certifications. These certifications were, make no mistake, a pay-to-play scheme by Killick, just another way that they, uh, were, uh, trying to get the, the benefit of both worlds, pretending to have this thing. It does seem to me a fairly plausible explanation came from Mr. Knight as well. What you need to convince us of is that there's some sort of fact dispute here. It does seem to me if, if Killick wants to operate his business in this way and not have employees and have independent contractors for whatever reason, they have the right to do that, but they can't ignore, uh, uh, federal law in, in the way that they operate it. So, uh, I mean, I've asked you before, and I'm not sure that there's much you can, you can focus us on, but why don't you try again. Where is the dispute of material fact here, uh, that would be relevant if we get beyond judicial estoppel to say this has to go back to the district court? What is it about how Killick controlled? Where is it about what your client actually did? Whatever the range of things is, where is the fact dispute? Well, uh, Killick controlled how much he got paid. They would not let him set his own pay rate. Just like an employee, he had to accept what they gave him. And at one point, he was at $45 an hour when he started. Killick reduced his pay down to $40. That shows that they had the control under the economic realities test, uh, over his ability to profit and loss. They also controlled how many hours he could work on any given project. But isn't it always true when you hire someone, whether they're independent or they're your employee, that you pay what you want to pay and they don't have to accept that and they can argue with you and say this and that? And that's true whether they're an employee or independent. Under the economic realities test, um, one of the factors is, is, uh, whether the employer controls the ability for profit and loss. Uh, we would argue that reducing the amount of money that he can make and requiring him to take that and also reducing... No, it's true. I mean, you know, you can't set up a company and say, well, we'll have people come as independent contractors and we'll pay them whatever they want because then they'll walk in and say they want a million dollars an hour. I mean, I, yeah, you have to have something, whether, again, whether it's your employee or your independent contractor. I mean, if you hire somebody to come be a maid in your house, are you going to just pay whatever they want regardless of whether they're your employee or they're independent? Well, no, but, um, you know, the independent contractor is somebody who is offering their an extended period of time for a lesser rate. They're saying that this is what my skill set is, this is how much I... But he could have done that, but obviously he was willing to take the money they gave, but he could have said, and I think he finally did. Isn't that why he left? That he finally found something he thought was better? And that's when he decided to sue, not while he was work, quote, working there? Well, in 2020, he stopped working for Killick and the reason was primarily because of the pandemic. A lot of the pipeline projects were shutting down because... But going forward, he didn't come back. Well, he went and worked for a company that could make him an employee and pay him a W-2 and all that stuff. Okay. So he always had that option. He was well aware he was not being treated as an employee and if he wanted to be, you know, he had that option wherever it was he went. He did ask Killick at one point to make him a W-2 employee and the response that Killick gave in the deposition that Mr. Guillermo Gray testified to is that Killick said it would cost too much money. Again, goes to the bottom line of why Killick was perpetuating this falsehood. All right, counsel. Thank you. Thanks to both of you for your assistance to us on this case. We'll take it under advisement.